# MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P. C.

ELKAN ABRAMOWITZ
RICHARD F. ALBERT
ROBERT J. ANELLO***
LAWRENCE S. BADER
BENJAMIN S. FISCHER
CATHERINE M. FOTI
PAUL R. GRAND
LAWRENCE IASON
JUDITH L. MOGUL
JODI MISHER PEIKIN
ROBERT M. RADICK***
JONATHAN S. SACK**
EDWARD M. SPIRO
JEREMY H. TEMKIN
RICHARD D. WEINBERG

565 FIFTH AVENUE
NEW YORK, NEW YORK 10017
(212) 856-9600
FAX: (212) 856-9494

www.maglaw.com

WRITER'S CONTACT INFORMATION

(212) 880-9410
jsack@maglaw.com

JASMINE JUTEAU
BARBARA MOSES*

ROBERT G. MORVILLO
1938-2011
MICHAEL C. SILBERBERG
1940-2002
JOHN J. TIGUE, JR.
1939-2009

*ALSO ADMITTED IN CALIFORNIA AND WASHINGTON, D.C.
**ALSO ADMITTED IN CONNECTICUT
***ALSO ADMITTED IN WASHINGTON, D.C.

December 10, 2014

**BY ECF AND FEDERAL EXPRESS**

The Honorable I. Leo Glasser
Senior United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: <u>United States v. Sant Singh Chatwal, 14 CR 143 (ILG)</u>

Dear Judge Glasser:

This letter is submitted on behalf of Sant Singh Chatwal in reply to the government's sentencing memorandum. We will reserve most of our responses to the government for the sentencing hearing on December 18, 2014. Two points warrant brief discussion in writing.

**Sentencing Disparity**

In its sentencing memorandum, at pages 27-31 and 34-35, the government cites five cases ostensibly in support of its argument that a guidelines sentence for Mr. Chatwal would be consistent with other campaign finance sentences. That argument is wrong.

In four of the five cases, the court imposed sentences substantially below the advisory guidelines range despite significant aggravating factors not present in this case. And the fifth case involved such wide-ranging criminality and aggravating factors that it bears no relationship to the present case. Far from supporting what the government seeks, these five cases show that the sentence requested by the government would lead to gross disparity, and that the probationary sentence urged on behalf of Mr. Chatwal is supported by the sentences in other cases, as discussed in our sentencing memorandum, and is appropriate.

Three of the five cases referenced by the government (*United States v. Magliocchetti*, *United States v. Danielczyk* and *United States v. Whittemore*) were discussed in the defense's sentencing memorandum (pages 66-67). We argued there that, despite significant aggravating factors, the courts in those cases imposed sentences substantially below the guidelines, and that those sentences supported a substantial downward variance for Mr. Chatwal. A consideration of the facts of each case supports that conclusion.

In *United States v. Whittemore*, 12-cr-58 (D. Nev. 2014), on which the government heavily relies, the defendant was found guilty of causing conduit contributions involving more than $120,000. In all other respects, Whittemore could hardly be more different from Mr. Chatwal. Whittemore committed more than one type of campaign-finance related violation and was convicted only after a hard-fought trial. Whittemore caused the unlawful contributions to secure favorable treatment for a land-use petition and gain recognition for an eponymous research institute – motivations the court found strongly to suggest the appearance of a quid pro quo, which was a serious aggravator at sentencing. *See* Gov't Ex. A (Whittemore Tr.) at 167, 171. Whittemore was an attorney and well versed in the laws of campaign finance, a fact to which the court alluded several times in imposing sentence. *See id.* at 166, 172-73. The court refused to grant Whittemore credit for acceptance of responsibility, coming as it did only after his loss at trial. Notwithstanding these circumstances, the court granted a substantial downward variance from the 41 to 51 month advisory guidelines, imposing a 24-month sentence.

Denying Whittemore's request for probation, the court contrasted Whittemore's circumstances with those of defendants in other cases, in which the defendants had pleaded guilty, waived their right to appeal and taken responsibility for their actions, and probation was ordered. *Id.* at 176. The district judge thus viewed as significant some of the very facts urged here as grounds for imposing a probationary sentence.

In *United States v. Magliocchetti*, 10-cr-286 (E.D. Va. 2011), the defendant was a lobbyist whose livelihood was based on currying political favor, often through illegal conduct, as the case revealed. The government correctly notes that Magliocchetti, unlike Mr. Chatwal, was not convicted of obstruction of justice. However, in other significant respects, Magliocchetti's misconduct was more substantial than Mr. Chatwal's. Magliocchetti sought a tangible financial benefit from his illegal contributions and failed to plead guilty until quite late in the proceedings. He also made more than twice the amount of illegal contributions made by Mr. Chatwal. The court nevertheless granted him a significant downward variance from the advisory guidelines of 46 to 57 months, imposing a sentence of 27 months.

In *United States v. Danielczyk*, 11-cr -85 (E.D. Va. 2013), the defendant pleaded guilty not only to campaign finance violations but also to extensive obstruction of justice, consisting of destroying and falsifying evidence and repeatedly making false statements to federal agents. He committed his campaign finance offenses in order to obtain a significant benefit: an ambassadorship. Danielczyk also failed to take responsibility for his actions until the last

possible moment, pleading guilty shortly before his trial was to begin. Danielczyk was denied credit for acceptance of responsibility. Nevertheless, the court imposed a 28-month sentence, substantially below Danielczyk's advisory guideline range of 63 to 78 months.

Unlike these defendants, Mr. Chatwal did not seek personal benefit from his contributions. The government contends, citing a few words from countless hours of undercover recordings made over the course of several years, that he wanted to buy influence. But it fails to point to a single instance in which Mr. Chatwal sought to get a benefit for himself. The only time he attempted to make use of a relationship with a politician (Candidate B) was to help a friend – someone who turned out to be an informant sent by the government to seek assistance from the candidate.

The remaining two cases mentioned by the government, *United States v. Tigani* and *United States v. Bigica*, likewise support the sentence urged by the defense.

In *United States v. Tigani*, No. 11-cr-42-GMS (D. Del. 2012), the defendant pleaded guilty to two counts of tax fraud arising out of misuse of company funds, involving over $360,000 in unpaid taxes, in addition to conduit contribution violations. He also committed several other election-related offenses beyond his conduit contributions. Tigani's campaign finance-related violations were directly tied to his lobbying for favorable regulatory treatment— in Tigani's case, for his family liquor business. Despite this range of serious criminal conduct, the court granted a downward variance from the advisory guidelines of 37 to 46 months, imposing a 24-month sentence.

In *United States v. Bigica*, No. 12-318 (FSH) (D.N.J. 2013), the defendant's campaign finance violations were part of an extensive criminal scheme that involved tax evasion, resulting in nearly $2.2 million in unpaid taxes; fraudulent transfer of real property about which he lied to federal agents; use of his company's funds to pay for millions of dollars in personal expenses; conversion of approximately $2.5 million in checks that were meant for his company; and an 11-year pattern of obstruction of justice that included interference with the IRS, obstruction of criminal investigations and hiding assets from the government. Bigica was not credited with acceptance of responsibility because even after his guilty plea he continued his evasive conduct with both the IRS and the Probation Office. Bigica's 60-month sentence should have no bearing on an appropriate sentence in this case.

In short, the cases relied upon by the government demonstrate that courts have consistently decided that the advisory guidelines applicable to campaign finance offenses are too harsh and warrant substantial downward variances—even for defendants who go to trial or otherwise fail to accept responsibility for their conduct, even for defendants who act for personal financial gain, and even for defendants who obstruct justice. To avoid disparity, Mr. Chatwal, who accepted responsibility early and did not act for personal gain, should likewise be given a substantial downward variance. And that is true even before consideration of all the other

mitigating factors set forth in our sentencing memorandum, including Mr. Chatwal's family circumstances and lifetime of generosity. On the basis of all the grounds for downward variance discussed in our sentencing memorandum and here, a probationary sentence is appropriate.

The government, at page 28 of its memorandum, suggests that a sentence of incarceration is warranted because Mr. Chatwal sought to interfere with its investigation, but obstruction of justice that is incidental to a campaign finance violation does not call for the imposition of an incarceratory sentence. In *United States v. Stipe*, 03-cr-00128 (D.D.C. 2003), noted in our sentencing memorandum at page 75, the court imposed a probationary sentence despite the defendant having committed perjury and obstruction of justice in connection with the government's investigation of campaign finance violations.

Similarly, in *United States v. D'Souza*, 14-cr-34(RMB) (S.D.N.Y. 2014), discussed in our sentencing memorandum at page 75, the court earlier this year imposed a probationary sentence despite the defendant's failure to accept responsibility and the government's allegation that the defendant instructed a straw donor to lie about his contributions. Mr. Chatwal's conduct does not warrant a harsher sentence.

The sentence in *United States v. Khan,* 13 CR 268 (RJD) (E.D.N.Y. 2014), decided in this court about one month ago, further supports the reasonableness of the sentence we seek. In that case, the defendant pleaded guilty to mail and wire fraud charges and faced a guidelines range of 63 to78 months. Despite having caused a nearly $5 million loss in a check-kiting scheme, the defendant was given a sentence of probation based on several substantial mitigating factors, including extensive generosity and community involvement as well as early acceptance of responsibility – factors that are present in this case.

### BCRA "Report and Wait" Provision

In connection with our argument that the guidelines adopted by the Sentencing Commission are at odds with the Bipartisan Campaign Reform Act (BCRA), the government references, at page 17 n.1 of its memorandum, that Congress did not reject the campaign finance guidelines. Congress's failure to act is not dispositive.

Ordinarily, when a new Guideline is adopted, Congress is given 180 days to reject it. If Congress does not affirmatively reject it within the time limit, the Guideline goes into effect. Although Congress did not reject the Commission's proposed guideline here, "[n]ot every [Congressional] silence is pregnant." *United States v. Butler*, 207 F.3d 839, 851 (6th Cir. 2000) (citing *Burns v. United States*, 501 U.S. 129, 136 (1991)). The Sixth Circuit in *Butler*, cited in our memorandum, refused to "infer too much from mere [Congressional] 'silence,' because to do so would "dictate that all enacted guidelines inherently satisfied Congressional intent, and would eliminate [the courts'] vital role—described in *LaBonte* and other cases—of squaring the enacted guideline with the original statutory language." *Butler*, 207 F.3d 839 at 851.

\* \* \*

The government has argued that our grounds for a probationary sentence rest to a large degree on Mr. Chatwal's wealth. That position is incorrect, as we will explain further at the sentencing hearing, Mr. Chatwal has demonstrated extraordinary generosity and service to others throughout his life, long before he attained wealth and achieved prominence. It is what he gives in time and energy and dedication, not money, on which we rely. And what he gives to his family, especially his two sons, is about love and extraordinary support, not wealth.

For all the reasons set forth above, and in our sentencing memorandum, the Court should impose a sentence of probation with a requirement of substantial community service.

Respectfully Submitted,

Jonathan S. Sack

Enclosure

cc: Assistant U.S. Attorney Martin Coffey (By Email and Federal Express)
Ms. Michelle Espinoza, U.S. Probation Department (By Email and Federal Express)